## In re GRAB.

(Supreme Court, Appellate Division, Second Department.   June 14, 1898.)

VILLAGES—REGRADING STREET—DAMAGES.
   Where a village charter contains no provisions for ascertaining the damages sustained by a property owner through the regrading of a street, those of the "Village Law" (Laws 1897, c. 414, § 159) apply.

Appeal from special term.

In the matter of the application of John Grab for the appointment of commissioners to determine compensation to which applicant is entitled, as owner of real estate in the incorporated village of New Rochelle, by reason of the change of grade in certain streets in said village.   From an order appointing commissioners, the village appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

J. Addison Young, for appellant village of New Rochelle.

Michael J. Tierney, for respondent.

GOODRICH, P. J.   The applicant is the owner of a lot, 100 feet by 113 feet 6 inches, situated on the corner of Union avenue and Second street, in the village of New Rochelle.   The premises are occupied by the applicant as a residence and hotel.   The streets named have been opened, graded, and traveled by the public for many years.   In 1897, without the consent of the applicant, the village altered the grade of both streets in front of his property by lowering the same so as to cause damage to his premises.   He brings this proceeding to ascertain the amount of such damages, under section 159 of the "Village Act" (Laws 1897, c. 414).   The village opposes the application, on the ground that such proceedings can be taken only under the provisions contained in the special act incorporating the village (Laws 1864, c. 249, as amended by Laws 1890, c. 56).   The court made an order appointing commissioners, and from this order this appeal is taken.

The real question involved is whether the proceedings must be taken under the charter of the village, or under the "Village Law." Section 159 of the village law is a substantial re-enactment and incorporation into the village law of chapter 113 of the Laws of 1883, where, for the first time in the legislation of this state, special proceedings were provided for summarily estimating the damages occasioned to abutting property owners by the changing or alteration of the grade of a street in an incorporated village.   This section, so far as it relates to the subject of our inquiry, reads as follows:

"If a village has exclusive control and jurisdiction of a street or bridge therein, it may change the grade thereof.   If such change of grade shall injuriously affect any building or land adjacent thereto, or the use thereof, the change of grade, to the extent of the damage resulting therefrom, shall be deemed the taking of such adjacent property for a public use.   A person claiming damages for such change of grade must present to the board of trustees a verified claim therefor, within sixty days after such change of grade

is effected. The board may agree with such owner upon the amount of damages to be allowed to him. If no agreement be made, within thirty days after the presentation of the claim, the person presenting it may apply to the supreme court for the appointment of three commissioners to determine the compensation to which he is entitled."

The village charter does not use the words "change of grade" as the village law does. Upon this subject the former is absolutely silent. There is no reference to changing the already established grade of a street. Section 2 of title 5 confers power upon the trustees "to cause streets and avenues to be opened, graded, and paved, widened and regulated, within the limits of said village, sidewalks to be · flagged, and curb and gutter stones set, and streets and avenues to be kept in repair; to provide that lamp posts and lamps be erected and lighted, and cisterns made for the purpose of furnishing water in case of fire; to cause sewers and drains, wells and pumps to be constructed and repaired; and generally to make such other improvements, in and about such streets, avenues, and squares, as the public want and convenience shall require." Section 3 provides that "whenever a petition for opening, grading, widening or regulating any street or avenues" shall be presented to the trustees, and if they deem it proper to make such improvements, "and if it shall be necessary for the purpose of making such improvement to acquire title to land, the trustees shall offer in writing to the owner or owners of the land necessary to be acquired such compensation for the title thereto and for the improvements thereon as they may deem just and reasonable. If the owner or owners of such land and improvements thereon shall refuse or neglect for a period of ten days after the offer aforesaid being made to agree to accept such compensation, and shall refuse to convey to the village, title to the land necessary for such improvements," then the trustees may apply to the court for the appointment of "three persons as commissioners, to estimate the amount of damages sustained by the owner or owners of such lands as may be affected by such improvement." It seems perfectly clear that the only case to which this provision relates is where, in the proceedings to open, grade, and pave a street, the trustees find it necessary "to acquire title to land," and that it does not relate to damages occasioned by regrading. There is, then, no authority in the special charter of the village to authorize a proceeding like the present, to ascertain the damages sustained by a regrading. Indeed, it may be somewhat doubtful whether the village, under its charter, has any power to regrade a street. For this power, resort must be had to the village law, which is clear and explicit in that regard, as it is also in defining the proceeding to estimate damages for such regrading. Section 159 provides that, where a village has exclusive control and jurisdiction of a street, it may change the grade thereof; but, if the same shall require any adjacent building or land, such change of grade "shall be deemed the taking of such adjacent property for a public use"; and, if the parties cannot agree upon the amount of such damage, application may be made to the court for the appointment of commissioners of estimate, as was done in this proceeding.

Section 340 of the village law provides that a village incorporated under and subject to a special law "possesses all the powers and is subject to all the liabilities and responsibilities conferred or imposed upon a village incorporated under this chapter, or upon an officer thereof, not inconsistent with such special law"; and the appellant contends that this does not provide that "all the provisions of the general law shall apply to special villages when not inconsistent; it merely says the special village shall have all the powers and be subject to all the liabilities of a general village so far as not inconsistent with the powers and liabilities as set forth in their special charters." It is difficult to appreciate the bearing of this statement upon the questions involved. The village of New Rochelle, by its charter, has certain specific powers. Among such powers there is no specific authority to regrade streets. If the village of New Rochelle should, without lawful authority, enter upon a public street, and regrade it so as to cause damage to abutting landowners, it would be doing an unlawful act. The act of 1883 inferentially recognized this position, and the village act (section 159) expressly recognized it when it declared such entry to be a taking of private property for public use, for which compensation must be made. As the trustees must resort to the village act for their power in this respect, so abutting owners may resort to it for the remedy therein provided. It is suggestive that in the original charter of the village (Laws 1864, c. 249) the section under consideration did not contain the word "graded." This was added by an amendment in chapter 440 of the Laws of 1872. At this latter date there was no express legislation granting compensation to abutting owners for damages by reason of a change of grade, so that it cannot be conclusively argued that the legislature intended that the word "graded" should include the regrading or changing of an established grade, and the payment of consequent damages. It is equally suggestive that section 5 of the village charter provides for the filing of a map of the lands affected by the opening and grading of a new street, but not of any profile of the grading. It may be said that the requirement for the making of a map does not imply any change of existing grades of the land, as would the requirement of the making of a profile.

It is urged that this proceeding involves many applications by persons claiming to have received injury by the action of the village trustees, and that the village may be involved in large expense thereby. This relates to the policy of legislative action, with which we have no concern, and over which we have no control. A similar result is occasioned in all cases where private property is taken by the public authority, or by quasi public corporations for public— that is, for their own—use. I know of no law which compels all who claim to be thus aggrieved by the taking of their property by a corporation to unite in one proceeding to determine the amount of their damages respectively. To compel them to do so might impose upon the individual the intolerable burden of attending through a long litigation, in most of which he has no interest, and watching and defending his own rights, where the amount involved is so small

as not to justify the consequent labor and expense.    We are clearly of opinion that the special charter of the village of New Rochelle confers upon the village trustees no power to apply to the court for the appointment of commissioners to estimate damages resulting from the regrading of the street in question, and that this proceeding is maintainable alone under the provisions of the village law herein cited.

The order is affirmed, with costs.    All concur.

Order affirmed, with $10 costs and disbursements.